# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL McKAY, | Case No: 13 c 1535 |
| Plaintiff, | |
| v. | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## ORDER

Plaintiff Michael McKay seeks reversal or remand of the Administrative Law Judge's decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act. For the reasons outlined, plaintiff's Motion for Summary Judgment is granted [dkt. 23] and defendant's Motion for Summary Judgment is denied [dkt. 29].

## STATEMENT

Plaintiff Michael McKay seeks reversal or remand of the Administrative Law Judge's ("ALJ") decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1] The parties consented to the jurisdiction of United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). After careful review of the record, the Court now remands the case for further proceedings. Plaintiff's Motion for Summary Judgment is granted [dkt. 23] and defendant's Motion for Summary Judgment is denied [dkt. 29].

---

[1] 42 U.S.C. §§ 405(g), 416(i), 423(d).

1

## I. FACTUAL BACKGROUND

Plaintiff filed for DIB September 23, 2009,[2] alleging disability beginning August 29, 2009 as a result of injuries sustained in a motor vehicle crash.[3] Plaintiff lists a broken left femur, broken left hip, and a head injury as the conditions affecting his ability to work.[4]

On August 29, 2009, plaintiff drove into a utility pole.[5] Plaintiff was airlifted to the hospital and spent about a month in a coma.[6] His initial injuries included a traumatic brain injury, a broken left femur, multiple broken ribs, a broken jaw, a sternal fracture, a fractured left acetabular (cup shaped cavity at the base of the hipbone), and a left mandible fracture.[7] Plaintiff was intubated[8] and placed on a ventilator,[9] and he required the use of a feeding tube.[10] While at the hospital, plaintiff underwent repairs to his jaw, pelvis,[11] and left femur,[12] in which a rod and two screws were used.[13] Due to significant cognitive impairments, plaintiff required a 24 hour sitter[14] and was deemed incapable of making his own medical or legal decisions.

On September 26, 2009, plaintiff was transferred to the Rehabilitation Institute of Chicago and remained there until October 30, 2009.[15] Plaintiff was better oriented to person, place and time, but was confused as to who he lived with.[16] He still exhibited cognitive deficiencies in regard to memory and concentration,[17] but was considered in a period of rapid

---

[2] R. at 70.
[3] R. at 76.
[4] *Id.*
[5] R. at 320.
[6] R. at 42, 716.
[7] R. at 327.
[8] R. at 322.
[9] R. at 375.
[10] R. at 327.
[11] R. at 398.
[12] *Id.*
[13] R. at 454.
[14] R. at 400.
[15] R. at 476.
[16] *Id.*
[17] R. at 484.

recovery.[18] Before transferring to SNF care, plaintiff was deemed still unable to make his own decisions.[19] Plaintiff was admitted to Manor Care on October 30, 2009.[20] Examination on November 2, 2009 indicated plaintiff still suffered from impaired judgment, insight, and memory,[21] and that he presented as forgetful and confused.[22]

To facilitate his recovery, plaintiff treated with orthopedic surgeon, Daniel Troy, M.D. Dr. Troy performed reconstructive surgery on plaintiff's hip,[23] and the record indicates plaintiff continued to treat with Dr. Troy until, at least, December 2010.[24] During the course of his treatment with Dr. Troy, plaintiff transitioned to the use of a cane,[25] and in June 2010 Dr. Troy noted plaintiff was ambulating independently.[26] Dr. Troy noted on several occasions that plaintiff was "pleased with his progress"[27] or was doing better, but opined that plaintiff was likely heading for disability.[28]

To increase mobility, plaintiff worked with physical therapists. During plaintiff's initial session in November 2009 he indicated his pain was an 8-9/10.[29] Plaintiff showed significant improvement during the course of his treatment, although plaintiff still remained physically impaired, and by September 2010 plaintiff rated his pain at a 1/10.[30] During this session plaintiff was also able to lift 20 pounds and walk for 30 minutes, and plaintiff's therapists noted he could walk longer than 45 minutes in a store.[31]

---

[18] R. at 486.
[19] R. at 498.
[20] R. at 508.
[21] R. at 518.
[22] R. at 517.
[23] R. at 733.
[24] R. at 981.
[25] R. at 620.
[26] R. at 718.
[27] R. at 717.
[28] R. at 715, 980, 981.
[29] R. at 647.
[30] R. at 752.
[31] R. at 752-53.

3

Plaintiff also sought treatment for injuries associated with his brain injury. Plaintiff treated with Thomas Lelio, M.D., a psychiatrist, and Ms. Dillberg, a therapist. Plaintiff treated with Dr. Lelio four times, from April 2010 to November 2010.[32] Dr. Lelio's notes indicate plaintiff was doing better; however, Dr. Lelio also notes plaintiff was depressed with how his life had changed[33] and that he felt a lot of anxiety and tension.[34] When assessing plaintiff for disability, Dr. Lelio found that plaintiff's loss of self esteem affected his daily activities and his condition impacted his ability to sustain concentration and attention resulting in failure to complete tasks.[35] Ms. Dillberg found plaintiff suffered from extreme limitations in daily activities, maintaining social functioning, and maintaining concentration, persistence, and pace.[36]

On March 5, 2010, plaintiff also underwent a neuropsychological evaluation with Michelle Delehant, PhD. Dr. Delehant found plaintiff's verbal abilities were average, but that his visuospatial skills were in the low average range.[37] She noted plaintiff often asked for things to be repeated, that his recall memory seemed impaired,[38] and that he had difficulty encoding information, comprehending instructions, and sustaining concentration over long periods of time.[39] Dr. Delehant concluded that plaintiff was competent and capable of making his own medical and legal decisions, and she suggested a neuropsychological re-evaluation before he returned to work.[40]

After considering the evidence, the ALJ concluded plaintiff was not disabled.[41] The ALJ

---

[32] R. at 972-79.
[33] R. at 688.
[34] R. at 974.
[35] R. at 972-73.
[36] R. at 788.
[37] *Id.*
[38] R. at 584.
[39] R. at 385.
[40] R. at 587-88.
[41] R. at 28.

4

found plaintiff has the capacity to perform sedentary work,[42] and attributed her finding to plaintiff's significant improvement.[43] The ALJ also noted that any residual effects still plaguing plaintiff do not limit him past the restrictions listed in her Residual Functional Capacity ("RFC") assessment.[44]

## II. STANDARD OF REVIEW

Section 405(g) of the Social Security Act authorizes judicial review of the Commissioner's final decision. In reviewing this case, the Court's task is not to "displace the ALJ's judgment by reconsidering facts or making credibility determinations."[45] The Court's task is to determine whether the ALJ's decision is "supported by reasonable evidence, meaning evidence a reasonable person would accept as adequate to support the decision."[46] The ALJ does not have to "address every piece of evidence or testimony presented, but must provide a logical bridge between the evidence and her conclusion that a claimant is not disabled."[47] If the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required."[48]

## III. FIVE STEP INQUIRY

Claimant is disabled if she is unable to do any substantial gainful activity due to any "medically determinable physical or mental impairment which can be expected to result in death" and has lasted or is expected to last continually for no less than twelve months.[49] The Social Security Act provides a five step evaluation process for determining whether a claimant is

---

[42] R. at 24.
[43] R. at 25.
[44] *Id.*
[45] *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)(quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).
[46] *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).
[47] *Id.*
[48] *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009)(quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).
[49] *See* 20 C.F.R. § 404.1505(a)(4)(i-v).

disabled: (1) is the claimant employed in substantial gainful activity; (2) is the claimant's impairment severe; (3) does the impairment meet or equal one of a list of specific impairments enumerated in the regulations; (4) can the claimant engage in past relevant work, and; (5) is the claimant capable of performing other work?[50]

## IV. DISCUSSION

In support of plaintiff's request for remand, he raises three issues for review. We will consider: (1) whether the ALJ erred in posing her hypotheticals to the Vocational Expert ("VE"), (2) whether the ALJ properly evaluated and explained the weight she afforded the treating physicians, and (3) whether the ALJ supported her credibility assessment with substantial evidence.

### A. Hypothetical Posed to the Vocational Expert

Plaintiff argues that the ALJ erred in posing her hypotheticals to the VE because they failed to account for plaintiff's moderate deficiencies in concentration, persistence, and pace. However, the ALJ specifically includes "moderate restrictions in concentration, persistence or pace"[51] which she then translates into work-related restrictions[52] when posing her initial hypothetical to the VE.[53] Plaintiff then argues that simply stating these restrictions is not enough because the hypotheticals do not account for the restrictions as posed. We disagree. For example, the ALJ asks "if the individual was off task 30 percent of the time either due to pain or memory,

---

[50] 20 C.F.R. § 404.1520(a)(1).
[51] R. at 62.
[52] *Id.* (explaining these restrictions to mean "only simple instructions, only routine, repetitive tasks, only low stress work…and only occasional decision making").
[53] Even if the ALJ did not include this language, the Seventh Circuit has repeatedly let stand instances in which the ALJ failed to explicitly include the terms. *See O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)(stating "we also have let stand an ALJ's hypothetical omitting the terms "concentration, persistence and pace" when it was manifest the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"); *Johansen v. Barnhart*, 314 F.3d 283, 285, 288-89 (7th Cir. 2002)(allowing a hypothetical formulated in terms of "repetitive, low stress" work); *Similia v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)(finding that while concentration, persistence, and pace were not mentioned in the hypothetical, the underlying conditions were).

concentration problems or just the frustration, would an employer tolerate that?" and "are those jobs generally ones that the pace has to be maintained kind of consistently every hour through the hour or is it something that's generally spread through the course of the day?"[54] Therefore, the questions themselves included restrictions found by the ALJ.

Though not articulated by plaintiff, however, we find issue with some of the VE's responses to these questions. For example, the VE states that a person would, indeed, need to keep a consistent pace when responding to the question of whether a person suffering from moderate restrictions would need to maintain a consistent pace throughout the day. We know from the ALJ's RFC determination that plaintiff has moderate restrictions in concentration, persistence, and pace. But after introducing the jobs available to plaintiff, neither the ALJ nor the VE clarify whether a person suffering from moderate restrictions would be able to keep the consistent pace the jobs require. The VE also states that if a person was off-track 30 percent of the time or more because of pain or concentration, "it would be noticed and they would lose their job."[55] Here, again, we do not know if plaintiff's moderate restrictions constitute being off-track 30 percent of the time. The ALJ's conclusions regarding what jobs plaintiff could perform were those testified to by the VE *prior* to the ALJ posing these questions regarding pace.

Because the VE's conclusions raise those questions, we find the ALJ fails to meet her burden of establishing whether plaintiff is capable of performing the suggested jobs. When assessing disability, the Commissioner bears the burden of establishing that a claimant can perform other work.[56] The Seventh Circuit requires "reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the

---

[54] R. at 66.
[55] R. at 67.
[56] *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

7

employment opportunities otherwise available."[57] When reading the VE's testimony, it is not clear whether plaintiff's limitations and accompanying RFC diminish his ability to perform in the proposed jobs. The ability to perform the jobs suggested is pivotal to plaintiff's ultimate outcome of disability. We find a remand is warranted to clarify whether the VE's testimony fits with her conclusion that plaintiff is capable of performing these proposed jobs or, alternatively, suggest jobs plaintiff can perform.

### B. Weight Attributed to the Doctors

The ALJ affords no controlling or great weight to Dr. Troy and Dr. Lelio, and she gives no weight to Ms. Dillberg. In her opinion, an ALJ must provide a sound explanation for the weight she affords physicians, and must explain the evidence she finds to diminish the value of a treating physician's opinion.[58] Plaintiff disputes the weight the ALJ gives to plaintiff's treaters, arguing the ALJ failed to articulate the specific weight given to each treater and failed to consider the regulation factors.[59] We find the ALJ adequately discusses her weight determination for each treater.

#### i. Dr. Troy

Plaintiff argues the ALJ improperly found plaintiff's treating orthopedic surgeon, Dr. Troy, inconsistent in his findings and that the ALJ failed to articulate specific weight to Dr. Troy's opinion when stating "I do not assign controlling or great weight."[60] When assessing Dr.

---

[57] *Erhart v. Secretary of Health and Human Servs.,* 969 F.2d 534, 540 (7th Cir. 1992)(citing *Warmoth v. Bowen,* 798 F.2d 1109, 1112 (7th Cir.1986)).
[58] *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)(finding the ALJ was "required to provide a sound explanation for his decision to reject" the physician's opinion, and that the ALJ must explain the evidence used when finding the physician's opinion lacking).
[59] *See* 20 C.F.R. § 404.1527(c)(2)-(5)(If an ALJ decides controlling weight is not appropriate, she must determine what weight to give a physician's opinion by considering: (1) the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (2) the supportability of the opinions by medical signs and laboratory findings; (3) the consistency of the opinion with the record as a whole; and (4) whether the opinion was from a specialist).
[60] R. at 26.

Troy's opinion, the ALJ notes Dr. Troy "offered numerous opinions"[61] and points to the inconsistencies within his treatment notes with respect to his conclusions on disability and plaintiff's ability to ambulate. The ALJ also concludes Dr. Troy's work status form in August contrasts with his later opinion that plaintiff is disabled, and notes that this change is not accompanied by sufficient reasoning.[62]

An ALJ can decide to give less weight due to inconsistencies with treatment notes,[63] but she must explain these inconsistencies in her reasoning.[64] Here, the ALJ explains inconsistencies arise in comparing Dr. Troy's work status limitation in August 2010 with his conclusions favoring disability in subsequent examinations. The ALJ notes that the month following Dr. Troy's August assessments he wrote that plaintiff could not work, but "did not provide an explanation for this changed opinion."[65] While it is reasonable for Dr. Troy to adjust his opinion, he is required to point to objective medical evidence to explain the worse prognosis.[66] Dr. Troy does not provide any explanation for his change in diagnosis in September 2010 other than plaintiff has "just recently started ambulating."[67]

Furthermore, Dr. Troy's September conclusion that plaintiff has "just recently started ambulating"[68] contradicts his limitation assessment in August which finds plaintiff capable of

---

[61] *Id.*
[62] *Id.*
[63] *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2002).
[64] *See Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838 (N.D. Ill. 2006)(explaining the ALJ's conclusion that a doctor was inconsistent because his notes indicated "no further" problems was in error when the ALJ failed to address how the varying interpretations of "further" affected her conclusion of inconsistency). *Compare Maziarka v. Colvin,* No. 12C5897, 2013 WL 6099328, at *13 (N.D. Ill. 2013)(demonstrating an example of an ALJ articulating specific inconsistencies by mentioning that one physician found the claimant was improving in 2010 while hospital records showed claimant was suffering from degenerative disc disease).
[65] R. at 26.
[66] *See Rudicel v. Astrue*, 282 F. App'x 448, 453 (7th Cir. 2008)(holding a patient's condition may worsen but an ALJ can discount the opinion if the doctor did not provide any medical evidence to support his changed opinion).
[67] R. at 780.
[68] *Id.*

frequently walking,[69] as well as his notes from June which explain plaintiff ambulates independently.[70] The ALJ's statement that Dr. Troy is inconsistent is, therefore, supported by record evidence cited to by the ALJ.

Plaintiff also argues the ALJ improperly dismissed Dr. Troy's disability conclusions. While conclusions of disability are reserved for the Commissioner,[71] an ALJ can still consider a physician's views on this matter when coming to her own conclusions. Here, the ALJ reasons that Dr. Troy's conclusion is inapplicable because "when one reads his treatment notes, he really seems to be saying that the claimant cannot do his past work as an electrician."[72] The record supports the ALJ's finding. For example, Dr. Troy explicitly states "the plaintiff is disabled from returning to work as an electrician"[73] (although, we note that Dr. Troy also articulates a general view towards plaintiff's disability which is not limited to plaintiff's work as an electrician).[74] Because the ALJ is not required to accept a treating doctor's opinion on disability,[75] her reasoning for discounting this opinion is not in error.

Finally, plaintiff argues that the ALJ erred when she failed to attribute specific weight to Dr. Troy.[76] However, remanding for this reason would be "nitpicking" the ALJ's decision.[77] As demonstrated above, the ALJ offers multiple reasons for the lesser weight she affords Dr. Troy, and we find articulating this weight will have no effect on the ALJ's RFC because the restrictions Dr. Troy imposes in his August 2010 work status form are no more restrictive than

---

[69] R. at 781.
[70] R. at 718.
[71] *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010).
[72] R. at 26.
[73] R. at 981.
[74] R. at 980.
[75] *See Denton*, 596 F.3d at 424 (holding an "ALJ is not required to give controlling weight to the [physician's] ultimate conclusion of disability—a finding specifically reserved for the Commissioner").
[76] *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009)(holding when evaluating a treating source's opinion an ALJ must provide good reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight" given to the treating source's opinion).
[77] *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004)(finding that the court applies a commonsensical reading rather than "nitpicking" at the ALJ's decision).

the ALJ's.[78]

### ii. Dr. Lelio

Plaintiff also disputes the ALJ's weight determination for Dr. Lelio. Plaintiff finds four issues with the ALJ's decision, arguing that the ALJ inconsistently viewed how frequency affects the weight due each physician, played doctor in her analysis, wrongly discredited Dr. Lelio regarding his opinions on plaintiff's physical impairments, and failed to articulate specific weight to Dr. Troy's opinion when stating "I do not assign controlling or great weight." When assessing Dr. Lelio's opinion, the ALJ noted that he only saw plaintiff four times, and that "his opinion is not supported by his treatment notes, which are devoid of serious psychological abnormalities."[79] The ALJ also concluded that Dr. Lelio's "opinion is beyond his expertise, as the psychiatrist concluded that the claimant cannot stand for eight hours and will probably be in too much pain to function in a competitive work environment."[80]

The ALJ found the length and frequency of plaintiff's relationship with Dr. Lelio lessens the weight she attributed him. The regulations explain that "the longer a treating source has treated [a claimant] and the more times [claimant] has been seen by a treating source, the more weight [an ALJ is to give] a medical source's opinion."[81] The ALJ has the discretion to conclude that plaintiff's four visits with Dr. Lelio, coupled with brief treatment notes, do not warrant great weight.

Plaintiff also argues that the ALJ is inconsistent with her position on frequency since she relies more on Dr. Delehant who examined plaintiff only twice for the purposes of determining competency. However, because physicians referred to for examination do not have a treating

---

[78] *See* R. at 24, 781. For example, both the ALJ and Dr. Troy restrict plaintiff to occasional stooping, kneeling, crawling, balancing, and crouching, with no climbing ladders. Moreover, Dr. Troy found plaintiff capable of occasionally lifting, carrying, pulling, and pushing 15 pounds, whereas the ALJ restricts him to sedentary work.
[79] R. at 26.
[80] *Id.*
[81] 20 C.F.R. § 404.1527(c)(2)(i).

11

relationship, the relative lengths of each are not comparable. Moreover, the ALJ explains her reason for "relying heavily" on Dr. Delehant's report, noting that her assessments are much more thorough than Dr. Lelio's.[82] Dr. Delehant's report is replete with tests and examinations used to diagnose plaintiff's mental impairments[83] and, thus, provides explanation for what actually constitutes a "serious psychological derived abnormality." This appears to be why the ALJ used the results from Dr. Delehant's report to form the basis of her RFC determination. The ALJ further explains that Dr. Lelio's opinion regarding the severity of plaintiff's impairments is not supported by his treatment notes[84] because his notes briefly indicate plaintiff suffers anxiety and depression, and focus more on plaintiff's physical state.[85] We find, therefore, that the ALJ has not "played doctor,"[86] as plaintiff argues.

Additionally, the ALJ concludes that Dr. Lelio's opinion regarding plaintiff's physical limitation was outside his area of expertise. Here, the ALJ is within her purview to determine this opinion is due less weight than the physicians treating plaintiff for his physical impairments.[87] However, plaintiff argues that the ALJ should not have discounted the entire opinion because of these findings, but simply the portion detailing Dr. Lelio's physical assessments. As addressed above, the ALJ provides multiple reasons to support her weight assessment.

Finally, plaintiff argues that "the ALJ failed to meet her duty of indicating what weight

---

[82] R. at 27.
[83] *See* R. at 582-83, 584-88 (explaining the tests results indicated plaintiff had difficulty with memory, sustaining attention, and comprehending instructions and demonstrated plaintiff's percentile rankings and standard deviations to those of his peers).
[84] R. at 26.
[85] *See* R. at 976-79.
[86] *See Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996)("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").
[87] *See e.g.*, *Stephen v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(holding the ALJ entitled to give more weight to the specialists, claimant's orthopedic surgeon and neurologist, rather than the claimant's general practitioner and chiropractor); *see also* 20 C.F.R.§ 404.1527(c)(5) (explaining the regulations state an ALJ should generally give more weight to the opinion of a specialist regarding medical issues within his specialty).

12

she attributed"[88] to Dr. Lelio because she articulates no specific weight. Again, remanding for this reason "nitpicks" the ALJ's opinion.[89]

### iii. Ms. Dillberg

The ALJ states that Ms. Dillberg is not a source of acceptable medical evidence and affords her opinions no weight.[90] However, the ALJ still considers Ms. Dillberg,[91] recognizing she can serve as a valuable "other source" for information regarding the severity of plaintiff's impairments and how this might impact her ability to function.[92] The only evidence in the record to support Ms. Dillberg's conclusions is her RFC evaluation form which finds plaintiff suffers from extreme impairments in activities of daily living, maintaining social functioning, and concentration, persistence, and pace.[93] When reviewing Ms. Dillberg's assessments, the ALJ found they were "conclusionary comments [that were] unsupported [and] unpersuasive."[94] Additionally, the ALJ found Ms. Dillberg's opinions inconsistent with those of Dr. Delehant. We find given the lower threshold of explanation necessary when evaluating "other medical sources," the ALJ adequately explained her reasoning for affording no weight to Ms. Dillberg.

### C. The ALJ's Credibility Assessment

The ALJ found plaintiff's "allegations [were] out of proportion to his reports in the medical evidence."[95] In determining credibility, the ALJ must consider several factors, "including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors,

---

[88] Pl.'s Mot. Summ. J., 11 [dkt. 29].
[89] *See Rice*, 384 F.3d at 369 (finding that the court applies a commonsensical reading rather than "nitpicking" at the ALJ's decision).
[90] R. at 26; s*ee* 20 C.F.R. § 404.1513 (explaining that to establish an impairment the claimant needs to provide acceptable medical sources which include, 1) licensed physicians (medical or osteopathic doctors), 2) licensed or certified psychologists, 3) licensed optometrists, 4) licensed podiatrists, and 5) qualified speech-language pathologists).
[91] R. at 26.
[92] *See Eggerson v. Astrue*, 581 F. Supp. 2d 961, 966 (N.D. Ill. 2008).
[93] R. at 786-88.
[94] R. at 26; *see Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)(finding the weight an ALJ affords a source depends on whether her opinions are supported by objective evidence).
[95] R. at 27

medication, treatment, and limitations, and justify the finding with specific reasons."[96] The court treats the ALJ's credibility assessment with deference because she is best positioned to see and hear the claimant.[97] Furthermore, the ALJ's decision must be upheld unless it is "patently wrong."[98] On review, the Court's task is to examine whether the ALJ's decision was reasoned and supported.[99]

The ALJ's primary reason for the ALJ's adverse credibility decision rests on her finding that plaintiff has "significantly improved," [100] and she concludes that "the evidence does not fully support the claimant's contentions as to the magnitude of his symptomology and dysfunction, including his expressed need to lie down for extended intervals on most days."[101] Plaintiff argues that improvement does not demonstrate capacity to perform substantial work, nor mitigate plaintiff's allegations. We agree.[102] However, while this improvement is often relative to the serious condition he was in after the crash,[103] and though there is evidence to support plaintiff's statements of pain,[104] the record is replete with instances where plaintiff indicates he is better[105] or has no complaints.[106] Additionally, the record reflects a steady decrease in his reported pain. For example, his physical therapy records show his pain went from 4/10 in June 2010, to 1-2/10 in August 2010, to a 1/10 in September 2010.[107] If the pain is rated as a 1/10 when he is lifting

---

[96] *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *See also* 20 C.F.R § 404.1529(c).
[97] *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).
[98] *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).
[99] *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).
[100] R. at 25.
[101] *Id.*
[102] *Roddy*, 705 F.3d at 639; *See also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)(citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)(holding "improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace")).
[103] *See e.g.*, R. at 981 (noting "he is doing very well from where he came from").
[104] R. at 718, 719 (plaintiff's surgery to remove painful bone growth).
[105] R. at 620, 717.
[106] R. at 694, 695.
[107] R. at 752.

20 pounds and walking for 30 minutes,[108] the ALJ is not patently wrong to determine this reduces his credibility when he alleges the need to lie down during the day after reporting only the performance of simple tasks, such as light cooking.

## V. CONCLUSION

For the reasons stated above, plaintiff's Motion for Summary Judgment is granted [dkt. 23] and defendant's Motion for Summary Judgment is denied [dkt. 29]. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**ENTER:**

**DATED:** August 21, 2014

_____
Susan E. Cox, U.S Magistrate Judge

---

[108] *Id.*